IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICHOLAS FERA, JR.,

        Plaintiff,                        07cv0023
                                        **Electronically Filed**

    v.

BALDWIN BOROUGH, a municipality, JOHN
CONLEY, member of Council, DAVID
DEPRETIS, member of Council, MICHAEL
DUCKER, member of Council, MICHAEL E.
FETSKO, JR., member of Council, JOHN
FERRIS, JR., member of Council, FRANCIS
SCOTT, member of Council, CHRISTOPHER
T. KELLY, an individual and in his official
capacity of Chief of Police of BALDWIN
POLICE DEPARTMENT,

        Defendants.

## <u>MEMORANDUM OPINION</u>

September 20, 2007

On 2007, this Court entered the following Order denying Defendants' motions to dismiss[1]

Plaintiff's state common law defamation claims, only:

In light of Plaintiff's Amended Complaint (doc. no. 15) filed on February
20, 2007, Defendants' initial motions to dismiss (doc. nos. 4 and 8) were denied
on February 21, 2007, without prejudice.

Subsequently, Baldwin Borough and the Baldwin Borough councilmen
named as Defendants filed two identical motions to dismiss Plaintiff's
Pennsylvania common law defamation and conspiracy claims, his federal civil
rights claim under 42 U.S.C. § 1983, and his request for attorneys fees under 42
U.S.C. § 1988, (docs. no. 23 and 25), [FN 1 omitted] accompanied by identical
briefs. (docs. no. 24 and 26).  Counsel failed, however, to electronically sign these

---

[1] Defendant Christopher T. Kelly was the only one of the nine Defendants not to file a
motion to dismiss.

motions and briefs, necessitating "Erratas" to the two motions and to the two briefs in support of the motions, (docs. no. 28, 29, 30, 31), which "Erratas" attached signed motions and briefs appearing, from the docket, to be replacements for the motions and briefs previously filed, only with signatures.  The ECF docket still lists documents 23 and 25 as the pending motions to dismiss, as it apparently does not pick up "Errata" motions as separate motions.

As Plaintiff correctly points out in his "Motion to Strike Documents 23 through 26" (doc. no. 35), the motions and briefs Defendants filed as "Errata" at documents no. 28 through no. 31 are not identical to the unsigned documents no. 23 through no. 26, and the motions to dismiss do not request the same relief.  To the contrary, the "new" motions to dismiss now [curiously] request dismissal of *only* the defamation claim, not the conspiracy or the civil rights claims, or request for attorneys fees under section 1988. [FN 2]

[FN 2]  The viability of Plaintiff's civil rights/ section 1983 claim remains for future determination on motions for summary judgment.

The Court will grant Plaintiff's motion to strike the unsigned motions at document nos. 23 and 25, will deem the "Errata" motions at document nos. 28 and 30 to be the pending motions, and, after careful consideration of these motions and Plaintiff's response thereto, will deny the pending motions to dismiss, except as to Baldwin Borough which, plaintiff agrees, is not liable for defamation.

\*   \*   \*

Viewed in light of the forgoing liberal pleading standards, this Court simply cannot say, at this early stage of the proceedings, that Plaintiff will be able to state no set of facts in support of his defamation claim.  Ordinarily, Pennsylvania public officials are immune from liability for defamation under the Pennsylvania Political Subdivision Tort Claims Act, see 42 Pa.Cons.Stat. Ann. §§ 8542, 8546, but individual officials may be liable if their alleged defamatory statements amounted to willful misconduct, which includes gross negligence, and intentional or reckless misconduct.  See, e.g., *Ferrone v. Onorato*, 439 F.Supp.2d 442, 453 (W.D.Pa. 2006).  Accordingly, Defendants' motions to dismiss will be denied.

\*   \*   \*

**IT IS HEREBY ORDERED** that said motions to dismiss (at docs. nos. 28 and 30) **ARE DENIED** without prejudice to Defendants' raising the issues set forth therein in a motion for summary judgment at the appropriate time following discovery.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion to Strike

Documents 23 through 26" (doc. no. 35) is **GRANTED**.

Memorandum and Order of April 3, 2004 (doc. no. 36) at 1-4.

While the Court expressed reservations at that time about the "viability of Plaintiff's civil rights/section 1983 claim," Defendants did not challenge the legal sufficiency of Plaintiff's civil rights/section 1983 claims in his amended complaint.  Now, following discovery and failed mediation attempts, the viability of Plaintiff's civil rights/section 1983 claims is before the Court and is ripe for disposition.  After careful consideration of Baldwin Borough Chief of Police Christopher T. Kelly's motion for summary judgment (doc. no. 55) and the motion for summary judgment filed on behalf of the remaining Defendants, Baldwin Borough and six members of its Council (doc. no. 58), the briefs in support and in opposition, the respective statements of material facts, and the summary judgment record that has been adduced, the Court finds that Plaintiff is unable to support his civil rights/section 1983 claims, and will therefore dismiss said claims with prejudice.

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted).  In deciding a summary judgment motion, the court must "view the evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the Plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not."  *Anderson v. Consolidated Rail*

3

*Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d

241, 247 (3d Cir. 2004.)  *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001)

(court must view facts in the light most favorable, draw all reasonable inferences, and resolve all

doubts, in favor of the nonmoving party ).

### Amended Complaint

In his Amended Complaint, Plaintiff Nicholas Fera alleges that he was a member of

Defendant Baldwin Borough Council, that Defendant Christopher T. Kelly is the Chief of the

Baldwin Borough Police Department, and that the remaining individual Defendants were at

relevant times also members of Baldwin Borough Council.  Amended Complaint, ¶ ¶ 1-9.

Plaintiff brings this action "pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth

Amendment," Amended Complaint, ¶ 10, claiming that he was defamed and that his civil rights

were violated in October, 2004, based upon the following averments: Chief Kelly left a telephone

message for Plaintiff to come to see him at the Police Department; Plaintiff "complied with

Defendant Kelly's demand and appeared at the Police Department;" Chief Kelly "interviewed

Plaintiff about his conversation" with one Ed Alberts regarding permits for amusement devices at

Alberts' place of business; Chief Kelly told Plaintiff that Plaintiff had been overheard telling

Alberts to hide his amusement devices; Chief Kelly "threatened to charge Plaintiff criminally for

his actions regarding the conversation between Plaintiff and Alberts;" without having advised

Plaintiff of his Miranda and other constitutional rights, Chief Kelly demanded that Plaintiff

resign in ten minutes or face criminal charges, and threatened to embarrass Plaintiff and his

family in the media and in the community if he did not resign immediately. Amended Complaint,

¶ ¶ 17-35.

The Amended Complaint further alleges that Chief Kelly's accusation were baseless but,

nevertheless, Kelly typed up a letter of resignation for Plaintiff to sign "under threat of improper criminal charges being levied against him" and it appears that Plaintiff signed the letter. Amended Complaint, ¶ ¶ 37-38.  All members of Baldwin Borough Council were present at a meeting on October 27, 2004, and "acknowledged the receipt of a letter of resignation from the Plaintiff." Allegheny County 38.  Council then requested the Borough Secretary to advertise for the "vacancy created by the coerced resignation of the Plaintiff.  *Id.*

On November 1, 2004, "in a letter delivered to Borough of Baldwin Council, Plaintiff withdrew his resignation and advised Council he would continue his duties as Borough Councilman.  Amended Complaint, ¶ 39. Thereafter, according to the Amended Complaint, Council members all were notified that Plaintiff had withdrawn his resignation, no official action was ever taken as a result of the resignation or the withdrawal of same, Council never accepted the resignation, Plaintiff has not been impeached nor was he "removed from office and [he] did not vacate his seat as a member of . . . Council as Plaintiff withdrew his resignation."  Amended Complaint, ¶ ¶ 40-47.  Plaintiff also states that "Defendants violated the Pennsylvania Borough Code, as well as the Sunshine Act." Amended Complaint, ¶ 43.

Count I, "Violation of 42 U.S.C. 1983," Amended Complaint, ¶¶ 49-61, is against all Defendants for violation of Plaintiff's constitutional rights under color of state law.  Amended Complaint, ¶ 49.  Plaintiff claims that he has the "right to be free from the use of threats and official oppression deigned to coerce the Plaintiff into giving up his rights and privileges secured by the Constitution," by the following acts: a. through their "agent" Chief Kelly, Defendants "unlawfully seized and detained the Plaintiff by use of the unlawful and baseless threat of criminal prosecution . . .  for the purpose of unlawfully coercing the Plaintiff into the resignation

of his duly elected position;" b. through their "agent" Kelly, Defendants forced Plaintiff to resign through threat of baseless criminal prosecution; c. Defendants "published or cause to be disseminated information about Plaintiff's resignation which seriously damaged the Plaintiff's standing and associations in the community;" and d. Defendants stigmatized Plaintiff by claiming he was guilty of dishonesty or immorality. Amended Complaint, ¶ 50.  These various acts are said to have violated Plaintiff's Fourth and Fourteenth Amendments because they deprived Plaintiff of liberty without due process. Amended Complaint, ¶ 52-53.

Defendants are alleged to have acted with deliberate indifference to his rights and in concert and conspiracy with each other to deprive Plaintiff of his Fourth and Fourteenth Amendment rights to a. "be free from unlawful seizure, threats and coercion . . . ;" b. "be free from unlawful coercion and conspiracy . . . ;" and c. his right "not to be deprived of liberty without due process of law and the right to equal protection of the law . . ." Amended Complaint, ¶ 54.  Elsewhere, the Amended Complaint claims Borough Council and its members violated Plaintiff's right to be free from coercion when they refused to accept the withdrawal of his resignation, that they subjected him to "continuous, systematic scheme of intimidation and harassment," violated his liberty interests and his right to be free from unlawful detention, threats and coercion. Amended Complaint, ¶ 59.  Plaintiff claims Defendants' conduct has caused his removal from Borough Council, loss of reputation, fear of law enforcement and embarrassment and humiliation.

Count II, Civil Conspiracy, ¶¶ 62-70, alleges that "one or more" of the Council Members conspired with Chief Kelly to force Plaintiff to resign.  Count III is for common law defamation against all Defendants because a private resident of Baldwin Borough defamed Plaintiff and this

information must have come from one of the Defendants. Amended Complaint, ¶¶ 71-78.
Count IV state a claim for attorneys fees under 42 U.S.C. § 1988. Amended Complaint, ¶¶ 79-80.

It is difficult to discern a federal cause of action in reading this Amended Complaint,
although the Court gave Plaintiff the benefit of the liberal pleading standards at the motion to
dismiss stage of the proceedings.  At this summary judgment stage, it is impossible to discern a
federal cause of action after reviewing the materials and statements of fact submitted in support
of and in opposition to summary judgment, and lack thereof from Plaintiff.

Chief Kelly has submitted evidence - which Plaintiff admits - showing that he had
information that shortly after a Council budget meeting about unlicensed poker devices in the
Borough and a resolution that the matter be investigated, Plaintiff talked to Mr. Alberts about
Alberts' unlicensed gaming devices, and advised him that the matter had been discussed at a
Council meeting and that he better get licenses.  Chief Kelly was instructed by the Borough
Secretary to investigate possible violations of the Baldwin Borough ordinance regarding poker
devices, and he called Plaintiff into his office to discuss the Alberts' conversation.  Chief Kelly
investigated and interviewed Alberts and an employee of Hat-Mart and confirmed Plaintiff's
conversation, following which he called Plaintiff into his office and told him he interfered with
an investigation and could be charged criminally, but he could instead resign.

Plaintiff submitted the letter of resignation, but subsequently submitted a letter
withdrawing his resignation. Although Council scheduled a meeting to discuss a successor for
Plaintiff, there is no evidence that Council took any official action with regard to either the letter
of resignation or the letter withdrawing it.  On November 15, 2004, however, Plaintiff submitted

a letter to Council "reaffirming his resignation of October 27, 2004." Defendant Kelly Statement of Undisputed Facts, ¶ 52 (admitted by Plaintiff).

For his part, Plaintiff has submitted a two page "Statement of Undisputed Facts of Plaintiff" consisting of eleven numbered paragraphs of facts that he claims support his federal and common law claims.   Citing only his own two page affidavit and his own deposition in six of the eleven paragraphs, Plaintiff avers that he "did not get along" with other council members and was an effective Council Member, that Chief Kelly and Council Members conspired to threaten him with criminal charges, had an agreement to force him from office which they entered into a week before the "confrontation" with Kelly, and that Kelly told Plaintiff it would cost him $5,000 to $10,000 for an attorney to represent him on criminal charges. Plaintiff's Statement of Undisputed Facts (doc. no. 69) at ¶¶ 1, 3-7, 9.   The remaining numbered paragraphs contain the following "facts": most of the Council Members "were not friendly" to Plaintiff; Plaintiff had legitimate reason to talk to Mr. Albert of Hat-Mart about the lottery; a former Council Member told him to resign or face criminal charges.

Conspicuously absent from his statement of facts are any averments, let alone references to evidence of record, of the manner in which any defendant somehow disseminated any information to the citizen who defamed Plaintiff in a series of public letters, any proof of any conspiracy or agreement to support his conclusory allegations of conspiracy and agreement to force him to resign, or that he was at any time restrained or detained or otherwise had his freedom of movement curtailed by Chief Kelly.   Plaintiff has not met his burden of supporting his claims with actual facts that remotely would support any of his causes of action.

Under 42 U.S.C. § 1983, an individual may bring a suit for damages against any person

9

who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the United States Constitution or federal law. *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).   The first step in evaluating a section 1983 claim is to "identify the exact contours of the underlying right said to have been violated" and to determine "whether the Plaintiff has alleged a deprivation of a constitutional right at all." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006), quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000), quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998).

Moreover, in stating a claim for conspiracy, the Plaintiff may not merely make conclusory allegations of conspiracy. See *Rogers v. Mount Union Borough*, 816 F.Supp. 308, 314 (M.D.Pa. 1993). Rather, only allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient. See *Loftus v. SEPTA*, 843 F.Supp. 981, 986 (E.D.Pa. 1994).  A Plaintiff must make "specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D.Pa. 1999).

On the record before the Court, there was no seizure or curtailment of Plaintiff's freedom in any way to support any Fourth Amendment claim.  See *Shuman ex rel. Shertzer v. Penn Manor School Dist.*, 422 F.3d at 147 ("seizure occurs for Fourth Amendment purposes when 'a reasonable person would have believed that he was not free to leave.' *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).").  Similarly, there is no evidence to create a material dispute of fact as to any of the elements of a Fourteenth Amendment substantive

10

due process, procedural due process or "class of one" equal protection claim.  See *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006).  This is especially so since Plaintiff cannot even prove that he was forced to resign by any Council Member or the Borough, or even, for that matter, by Chief Kelly, in light of the fact that Plaintiff voluntarily reaffirmed his original resignation on November 15, 2004, and Council had never acted on the first one or its withdrawal.

As for the common law defamation claim, more often than not, when this Court dismisses all federal claims at the summary judgment stage, and there are only state claims remaining, it declines to exercise its discretion to entertain those claims pursuant to its supplemental jurisdiction, 28 U.S.C. § 1367, and remands the remaining claims to the appropriate state court for further proceedings.  However, it is within the Court's discretion to retain jurisdiction of the remaining state claims pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367(c) (the "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . ."), which does not automatically dissolve when the federal claims are dismissed. In making its determination, the district court should take into account generally accepted principles of "judicial economy, convenience, and fairness to the litigants."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Since Plaintiff has not offered one iota of evidence to prove that any of these Defendants had anything to do with the private citizen's letter writing campaign against Plaintiff, since plaintiff has had full an fair opportunity for discovery, and since substantial judicial and legal resources have been expended already, the Court will exercise its discretion to resolve the common law claim, and will dismiss it with prejudice for failure to support this claim.

An appropriate order will be entered in favor of all Defendants and against Plaintiff.[2]

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All ECF registered counsel

---

[2] The Court does not address Defendants' remaining arguments, such as immunity, but notes that they appear to have merit.

12